J-A08023-19

2019 PA Super 326

| | |
|---|---|
| US COAL CORPORATION, AND GRATIAN YATSEVITCH, III<br><br>Appellants<br><br>v.<br><br>BRIAN RAY DINNING, STEPHEN DINNING, DAVID LYNN DINNING, D.L. DINNING CO., LLC, FBR CAPITAL MARKETS & CO., FBR & CO., AK COAL RESOURCES, INC., FORMERLY KNOWN AS SOLAR FUEL COMPANY, INC., AND AK STEEL CORPORATION<br><br>Appellees | IN THE SUPERIOR COURT<br>OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br>No. 1021 WDA 2018 |

Appeal from the Order Entered June 20, 2018
In the Court of Common Pleas of Somerset County
Civil Division at No: 587 Civil 2013

BEFORE: PANELLA, P.J., STABILE, and McLAUGHLIN, JJ.

OPINION BY STABILE, J.:                    **FILED OCTOBER 29, 2019**

Appellants US Coal Corporation ("US Coal") and Gratian Yatsevitch, III ("Yatsevitch"), appeal from the June 20, 2018 order awarding sanctions and rendering final the trial court's previous grant of summary judgment in favor of Appellees, Brian Ray Dinning ("Brian"), Stephen Dinning ("Stephen"), David Lynn Dinning ("David"), D.L. Dinning Co., LLC ("D.L. Dinning", and, collectively with David and Stephen and exclusive of Brian, the "Dinning

Parties"), FBR Capital Markets & Co. and FBR & Co. (collectively "FBR"),[1] AK Coal Resources ("AK Coal"), Inc., f/k/a Solar Fuel Company, Inc. ("Solar Fuel"), and AK Steel Corporation ("AK Steel," and, collectively with AK Coal and Solar Fuel Company, "AK"). We affirm.

Appellants filed their complaint on October 17, 2013, alleging various causes of action, including breach of contract, promissory estoppel, unjust enrichment, fraud, and negligent misrepresentation. On October 4, 2017, the trial court granted the summary judgment motions of all Appellees on Appellants' causes of action, and found in favor of AK on an indemnity counterclaim. The October 4, 2017 order reserved ruling on the amount of AK's damages. On February 20, 2018, AK filed a petition for attorneys' fees. On March 27, 2018, the trial court conducted a hearing on attorneys' fees and a motion for sanctions filed by the Dinning Parties. On June 4, 2018, the trial court entered a judgment of $152,770.13 in favor of AK. On June 20, 2018, the trial court awarded $7,222.32 in sanctions to the Dinning Parties. The trial court designated the June 20, 2018 order as "a final order in this matter." Order, 6/20/18. Appellants filed their notice of appeal on July 7, 2018.

The complaint arises out of a business transaction whereby AK acquired a company then known as Solar Fuel. Brian and David owned Solar Fuel and wished to sell it. In pursuit of that goal, in October of 2010, Brian contacted

---

[1] FBR is not participating in this appeal.

- 2 -

Yatsevitch, an investment banker. Yatsevitch in turn contacted FBR, an investment-banking firm. FBR advised Yatsevitch that its client, AK, had an interest in buying Solar Fuel. AK and US Coal[2] considered a joint venture whereby the companies would acquire Solar Fuel. In August of 2011, Brian informed Yatsevitch that AK would not pursue the joint venture with US Coal. Subsequently, in October of 2011, AK agreed to acquire Solar Fuel without the involvement of Yatsevitch or US Coal, for 36 million dollars (the "Solar Fuel Sale"). On October 3, 2011, prior to consummating the Solar Fuel Sale, US Coal executed a release (the "Release"). Brian, serving as in-house counsel for US Coal, executed the Release on behalf of US Coal at the direction of Yatsevitch. Yatsevitch Deposition, 3/24/15, at 182. The Release was central to the trial court's grant of summary judgment in favor of AK. The trial court also found no enforceable oral agreement regarding the right of Yatsevitch and/or US Coal to receive compensation from the Solar Fuel Sale.

Before we address the merits of Appellants' arguments, we must consider whether we have jurisdiction over anything other than the order awarding sanctions to the Dinning Parties. Appellees note that the October 4, 2017 order disposed of all claims and parties. The only remaining issue from the parties' pleadings after October 4, 2017 was the amount of AK's award,

---

[2] Yatsevitch incorporated US Coal under the laws of Wyoming. US Coal's articles of incorporation, filed July 15, 2011, appear in the record as Exhibit 7 of the Appendix to AK's brief in support of its summary judgment motion.

which the June 4, 2018 order resolved. The only outstanding issue after June 4, 2018 was the Dinning Parties' motion for sanctions, which the trial court resolved on June 20, 2018. Appellants filed their notice of appeal on July 7, 2018, within the 30-day appeal period of the award of sanctions to the Dinning Parties but untimely as to all other orders. Thus, unless the June 20, 2018 order was the final appealable order in this matter, our jurisdiction is limited to a review of the award of sanctions granted in that order.

Appellees cite **Old Forge School Dist. v. Highmark, Inc.**, 924 A.2d 1205 (Pa. 2007), in which our Supreme Court held that a petition for sanctions and/or attorney fees was a separate matter over which the trial court retained jurisdiction after the parties appealed the final order on the merits. In that case, the Commonwealth Court, exercising original jurisdiction, entered an order sustaining preliminary objections and dismissing a complaint on February 7, 2006. **Id.** at 1206. The defendant filed an application for attorney's fees, pursuant to 42 Pa.C.S.A. §§ 2503(7) and 2503(9)[3] ten days later, on February 17, 2006. **Id.** at 1209. The plaintiff appealed the dismissal of the complaint without awaiting resolution of the fee application. **Id.** The Commonwealth Court entered an order granting the defendant's application for fees while the merits appeal was pending. **Id.** On appeal from the order

_____

[3] Section 2503 of the Judicial Code governs the right of litigants to receive counsel fees. 42 Pa.C.S.A. § 2503. Section 2503 is not at issue here.

granting the fee application the plaintiff, citing Pa.R.A.P. 1701(a),[4] argued the Commonwealth Court lacked jurisdiction to award fees, given the prior pending appeal on the merits. *Id.* at 1210. The Supreme Court disagreed, holding that the order dismissing preliminary objections was final and appealable, and that the fee petition was a separate matter for purposes of Rule 1701. *Id.* at 1211. In general, therefore, a fee petition is "connected to, but separate from, the underlying action." *Id.*[5]

Pursuant to **Old Forge**, the June 4, 2018 order was final and appealable, as it disposed of AK's counterclaim, the only claim remaining from the parties'

_____

[4] Rule 1701(a) provides: "Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter." Pa.R.A.P. 1701(a).

[5] The parties also address **In re Appeal of Affected and Aggrieved Residents from the Adverse Action of the Supervisors of Whitpain Twp.**, 924 A.2d 1205 (Pa. 2007), a zoning dispute in which the residents appealed an order granting rezoning from residential to limited industrial. By statute, the trial court conducted a hearing to determine whether the residents' appeal was frivolous and for the purpose of delay. *Id.* at 621. The court determined the appeal was frivolous and, when the residents failed to post the required bond, it dismissed their appeal. *Id.* The residents appealed to the Commonwealth Court and, while that appeal was pending, the opposing party filed a petition for attorney's fees. *Id.* The Commonwealth Court affirmed the order dismissing the residents' appeal as frivolous, and the trial court denied the opposing party's fee petition. *Id.* at 621-22. This Court, on review of the trial court's denial of the fee petition, concluded that the common pleas court lacked jurisdiction over the fee petition when it was filed. *Id.* at 622. The issue involved—the frivolity of the residents' appeal—was precisely the issue before the Commonwealth Court. *Id.* at 622. We entertained the appeal in the interest of judicial economy because the Commonwealth Court had already issued its decision. *Id.* Given our analysis in the main text, this case is not pertinent to our decision to exercise jurisdiction.

pleadings. The Dinning Parties' sanctions motion was a separate matter under the *Old Forge* analysis. The instant case is distinct however, in that the trial court in disposing of the Dinning Parties' fee petition, expressly designated the June 20, 2018 order as final. This case is also distinct from *Old Forge* in that the Dinning Parties' fee petition was pending prior to the June 4, 2018 order, which otherwise disposed of all claims and parties, whereas in *Old Forge* the fee petition was filed after the final order on the merits.

We observe that the trial court, on June 20, 2018, continued to have jurisdiction over the entire case, inasmuch as fewer than thirty days had passed since the June 4, 2018 order and no party had filed an appeal. *See* 42 Pa.C.S.A. § 5505. Appellants, in apparent reliance on the trial court's designation of the June 20, 2018 order as final, filed this appeal within thirty days of June 20, 2018. We conclude that the June 20, 2018 order in effect modified the June 4, 2018 final order pursuant to § 5505, and that Appellants' notice of appeal was timely as to all issues. *Old Forge* permits a fee petition to proceed as a separate matter under Rule 1701, but no party has cited any case that *requires* a fee petition to proceed as a separate matter.[6] Nor has any party argued that the trial court was prohibited from modifying the June

_____

[6] Because the fee petition and the merits proceeded under a single docket number, a single notice of appeal was appropriate. Our Supreme Court's decision in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018), poses no obstacle to our review.

- 6 -

4, 2018 order to resolve the pending fee petition. We therefore proceed to address the merits of all of Appellants' assertions of error.

Appellants' brief includes five argument sections, each of which challenges the trial court's entry of summary judgment in favor of Appellees.[7] A motion for summary judgment is appropriate after the pleadings are closed and "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[,]" or, after the completion of discovery, when the party bearing the burden of proof "has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. No. 1035.2(1), (2). We review the trial court's order as follows:

> Our scope of review ... [of summary judgment orders] ... is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

_____

[7] The Rules of Appellate Procedure require that the argument section of a brief be divided into as many sections as there are questions to be argued. Pa.R.A.P. 2119(a). Appellants' brief does not comply, which lists thirteen questions involved (Appellants' Brief at 6-7) and only five sections of argument. As we will explain in the main text, Appellants appear to address several questions in each section of argument. Questions that go unaddressed in the argument section we will deem waived, as specified in the main text.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Alexander v. City of Meadville*, 61 A.3d 218, 221 (Pa. Super. 2012).

Appellants' first assertion of error is that, contrary to the trial court's findings, they produced sufficient evidence of a breach of the Release by AK.[8] Appellants' Brief at 14. In essence, Appellants argue that they expected to receive compensation in exchange for executing the release, and that AK has not paid them. The Release, executed on October 3, 2011 between US Coal and AK, noted a prior letter of intent ("LOI") between them, and expressed the "parties desire to document termination of such discussions and release and waive any claims, rights or relationship that may exist." Release,

---

[8] This argument appears to encompass Appellants' second, third, and fifth questions presented. Appellants' Brief at 6.

10/3/11, at ¶ 1.[9]   The Release also acknowledges the parties' receipt of consideration. *Id.* at ¶ 2.  The Release is governed by Ohio law. *Id.* at ¶ 4. It states that it is the parties' entire agreement, and that alterations or amendments must be in writing. *Id.* at ¶ 6(a), (b).

Appellants argue that the Release is ambiguous as to their right to compensation, and that they did not in fact receive compensation for entering the Release.  Appellants cite one sentence in the Release stating that "as a condition to closing a transaction that will be beneficial to US Coal or its shareholders, [AK] is requiring that this Agreement be duly executed." Release, 10/3/11, at ¶ 1.   Because the nature of this transaction is unspecified, and because Appellants allegedly never received any valuable consideration in exchange for the Release, Appellants argue that interpretation of the Release required the admission of parol evidence and fact finding by a jury.  We disagree.

"Under Ohio law, "[a] release, or compromise agreement, is a particular kind of contract, and, like other contracts, requires a definite offer and an acceptance thereof *** [and] must be the result of a meeting of the parties' minds in order to be binding." ***Indus. Heat Treating Co., Inc. v. Indus. Heat Treating Co.***, 662 N.E.2d 837, 843 (Ohio Ct. App. 1995).  "A release of

---

[9]  The Release appears in the certified record at, among other places, Exhibit A to AK's June 23, 2014 answer and new matter to Appellants' amended complaint.

a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release." *Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990). The parties' intent governs the interpretation of a release. *Whitt v. Hutchinson*, 330 N.E.2d 678, 682 (Ohio 1975). Where a writing purports to be the parties' entire agreement, the parol evidence rule operates to bar any extrinsic evidence that contradicts or supplements the terms of the writing. *Bellman v. Am. Int'l Grp.*, 865 N.E.2d 863, 857 (Ohio 2007).

> The parol evidence rule states that absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements. Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction. The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract. […]

> The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.

        The principal purpose of the parol evidence rule is to protect
   the integrity of written contracts.

***Galmish v. Cicchini***, 734 N.E.2d 782, 788–89 (Ohio 2000) (internal citations

and quotation marks omitted). "Courts may not […] use extrinsic evidence to

create an ambiguity. Rather, the ambiguity must be patent; that is, apparent

on the face of the contract." ***PNC Bank, N.A. v. Springboro Med. Arts,

Inc.***, 41 N.E.3d 145, 153 (Ohio Ct. App. 2015).

        As noted above, the Release expressly purports to be the parties' entire

agreement. The Release contains US Coal's express acknowledgement of its

receipt of sufficient and valuable consideration in exchange for its execution.

The parol evidence rule therefore bars admission of extrinsic evidence to

support Appellants' claim that US Coal received no consideration. Moreover,

even were we to consider parol evidence, Yatsevitch testified that, prior to the

execution of the Release, there was no agreement as to compensation, and

that he was told the board of AK did not authorize any payment. Yatsevitch

Deposition, 3/24/15, at 99, 111. Yatsevitch also stated, "The [R]elease does

not promise payment." ***Id.*** at 113. Finally, we observe that the parties' non-

binding LOI, signed by Yatsevitch on behalf of US Coal, referenced in the

Release, disavowed any binding promises. Letter of Intent, 7/15/11.[10] Thus,

_____

[10] The LOI appears in the record as Exhibit 8 of the appendix to AK's brief in support of its motion for summary judgment, filed on August 15, 2017.

- 11 -

it appears that the Release was simply an additional memorialization of that fact.

As noted above, Appellants rely on a single sentence in Paragraph 1 of the Release contemplating a "transaction valuable to US Coal and/or its shareholders." Release, 10/3/11, at ¶ 1. Appellants fail to provide a coherent explanation of why that sentence is pertinent to the validity of the Release or US Coal's acknowledgement of receipt of sufficient consideration for its execution. Furthermore, as Yatsevitch acknowledged, that sentence does not support Appellants' claim that AK promised future remuneration after execution of the Release. We discern no error in the trial court's grant of summary judgment in AK's favor on Appellants' cause of action for breach of the Release.

In section "b" of their argument, Appellants claim the trial court erred in granting summary judgment in favor of AK on Appellants' promissory estoppel claim.[11] Appellants' Brief at 19. This argument is simply a restatement of Appellants' breach of Release argument under a different legal theory. *Id.* at 19-21.

> In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the

---

[11] This section of Appellants' Brief addresses their fourth question presented. Appellants' Brief at 6.

promise; and 3) injustice can be avoided only by enforcing the promise.

***Crouse v. Cyclops Indus.***, 745 A.2d 606, 610 (Pa. 2000). Promissory estoppel applies to prevent an injustice where an agreement is unenforceable due to a lack of consideration. ***Id.*** We have already explained that Appellants acknowledged receipt of consideration in exchange for executing the Release. Thus, Appellants cannot assert a cause of action for promissory estoppel. The trial court did not err in entering summary judgment in AK's favor on this cause of action.

In part "c" of their argument, Appellants claim the trial court erred in entering summary judgment in favor of AK on Appellants' claim of unjust enrichment. Appellants' Brief at 21-22. This argument does not correspond to any of Appellants' questions presented, in violation of Rule 2116 of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). Furthermore, Appellants have failed to support this argument with citation to any pertinent authority, in violation of Pa.R.A.P. 2119(b). Appellants have waived this argument. ***Giant Food Stores, LLC v. THF Silver Spring Development, L.P.***, 959 A.2d 438, 444 (Pa. Super. 2008) (holding that failure to support an argument with citation to authority results in waiver), ***appeal denied***, 972 A.2d 522 (Pa. 2009).

In section "d" of their argument, Appellants claim that the trial court erred in finding no triable issue of fact as to their fraudulent[12] and negligent misrepresentation[13] claims against the Dinning Parties.[14]  Appellants' Brief at 22-29.   Appellants do not allege that the Dinning Parties made any representations.  Rather, they argue that Brian made misrepresentations, and in so doing acted as the Dinning Parties' agent.

> While it is unnecessary to plead all the various details of an alleged agency relationship, a complainant must allege, as a

---

[12]  The elements of fraudulent misrepresentation are as follows:

> (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance.

**Weston v. Northampton Pers. Care, Inc.**, 62 A.3d 947, 960 (Pa. Super. 2013), **appeal denied**, 79 A.3d 1099 (Pa. 2013).

[13]  The elements of negligent misrepresentation are as follows:

> 1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.  Negligent misrepresentation differs from intentional misrepresentation in that the misrepresentation must concern a material fact and the speaker need not know his or her words are untrue, but must have failed to make a reasonable investigation of the truth of these words.

**Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects & Engineers, Inc.**, 119 A.3d 1070, 1076 (Pa. Super. 2015).

[14]   This argument encompasses Appellants' sixth and seventh questions presented.  Appellants' Brief at 6.

minimum, facts which: (1) identify the agent by name or appropriate description; and (2) set forth the agent's authority, and how the tortious acts of the agent either fall within the scope of that authority, or, if unauthorized, were ratified by the principal.

***Ettinger v. Triangle-Pac. Corp.***, 799 A.2d 95, 109 (Pa. Super. 2002),

***appeal denied***, 815 A.2d 1042 (Pa. 2003).

> An agency relationship may be created by any of the following: (1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel. Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are proper, usual and necessary to carry out express agency. Apparent agency exists where the principal, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when the principal fails to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

***Walton v. Johnson***, 2013 Pa. Super. 108, 66 A.3d 782, 786 (2013) (internal citations and quotation marks omitted). "The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts or conduct clearly implying an agency." ***Id.*** at 787.

Appellants cite ***Walton*** but do not explain the basis for Brian's alleged authority. They argue that Brian and the Dinning Parties were a "close-knit" family and that each was aware of what the other was doing. Appellants' Brief at 24. Appellants also noted that Brian and David were in a meeting with AK personnel shortly before the deal between US Coal and AK collapsed. ***Id.*** Appellants also produced a witness, Chris Ross, who testified to his belief that Brian was acting on behalf of Solar Fuel and David throughout the discussions.

*Id.* at 24-25. According to Appellants, Brian cut US Coal out of the Solar Fuel Sale in order to benefit his family. *Id.* at 26. Appellants also claim the Dinning Parties failed to produce any evidence indicating that Brian was not their representative. *Id.* at 25. Finally, Appellants produced a Consulting Agreement,[15] executed between Solar Fuel and D.L. Dinning on the day of the Solar Fuel Sale, whereby D.L. Dinning would provide consulting services for one year after the sale. The consulting agreement lists Brian as a representative of D.L. Dinning.

In our view, none of these items, individually or collectively, establishes that Brian was serving as an agent for the Dinning Parties, such that any false representations he made are attributable to them. Appellants have produced no evidence that Brian had express authority to act on the Dinning Parties' behalf. Nor have Appellants produced evidence that Brian's actions were proper, usual, and necessary to carry out express agency, so as to create implied authority, or that only words and deeds by the Dinning Parties led Appellants to believe Brian was the Dinning Parties' agent, so as to create apparent authority. The law provides that a family relationship is not, in and of itself, indicative of agency. Furthermore, as noted above, Brian was a shareholder of and in-house counsel for US Coal. Appellants do not explain

---

[15] The consulting agreement appears in the record as Exhibit G to Appellants' response and brief in opposition to the Dinning Parties' summary judgment motion.

how they failed to understand the alleged dual role of their own in-house attorney. The assertion that Brian cut US Coal out of the transaction for the benefit of the Dinning Parties is mere innuendo unsupported by any evidence. Finally, Appellants fail to explain the relevance of the appearance of Brian's name, as a representative of D.L. Dinning, in the Consulting Agreement. The Consulting Agreement was executed on the day of the Solar Fuel Sale, months after the proposed transaction involving Appellants fell apart.

In short, Appellants have failed to explain how any evidence of record presents a triable issue of fact as to Brian's agency under any of the theories described in **Walton**. Appellants' agency theory fails, and their arguments in support of their fraudulent and negligent misrepresentation causes of action against the Dinning Parties fail along with it, as none of Brian's alleged misrepresentations is attributable to the Dinning Parties.

Finally, in section "e" of their argument, Appellants claim the trial court erred in awarding $7,222.32 in attorney's fees to the Dinning Parties pursuant to Pa.R.C.P. No. 1023.4(a)(2)(iii).[16] We review the trial court's award for abuse of discretion. **Luccino v. Commonwealth, Dep't of Environmental Protection**, 809 A.2d 264, 268-69 (Pa. 2002). "The relentless pursuit of a claim which plainly lacks legal merit warrants an award of counsel fees." **Miller v. Nelson**, 768 A.2d 858, 862 (Pa. Super. 2001), **appeal denied**, 782

---

[16] Section "e" addressed Appellants' tenth through thirteenth questions presented. Appellants' Brief at 7.

A.2d 547 (Pa. 2001). The trial court opined that the Dinning Parties should have been removed from the case without having to litigate a summary judgment motion, inasmuch as there was no factual basis for Appellants' causes of action against the Dinning Parties. Trial Court Opinion, 6/25/18, at 1-2 (pagination ours). In response, Appellants simply reassert the arguments we have already rejected above. Appellants' Brief at 31.

We discern no abuse of discretion in the trial court's decision. Appellants relentlessly pursued misrepresentation claims against the Dinning Parties on their theory that Brian—a shareholder of and counsel for US Coal—was also the Dinning Parties' agent. The Dinning Parties concededly made no representation to Appellants.

Appellants also argue that the Dinning Parties' fee petition was defective because it failed to contain the proper notice under Pa.R.C.P. 1032.2(b). The record reveals that the Dinning Parties filed their motion for sanctions, with the proper notice, in response to Appellants' original complaint. Appellants filed an amended complaint that did not remove the causes of action against the Dinning Parties. Appellants now claim that the Dinning Parties' failure to renew the motion for sanctions in response to Appellants' amended complaint is fatal to the motion for sanctions.

Rule 1032.2(b) requires the motioning party to identify the portion of a "pleading, motion, or other paper" that gives rise to the request for sanctions, and to demand that the offending item "be withdrawn or appropriately

corrected." Pa.R.C.P. No. 1023.2(b). In this case, Appellants' amended complaint did not withdraw their causes of action against the Dinning Parties in response to the Dinning Parties' motion for sanctions. Appellants have failed to explain why, under the language of Rule 1023.2, the Dinning Parties should have been required to file a duplicate motion under these circumstances. We discern no abuse of discretion in the trial court's fee award, and we reject Appellants' argument that the Dinning Parties' motion was procedurally deficient.[17]

For all of the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of Appellees and against Appellants and its fee award in favor of the Dinning Parties and against Appellants.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2019

---

[17] We need not address Appellants' remaining questions presented. The first is simply a general assertion that the trial court erred in entering summary judgment, and the eighth, pertaining to Appellants' tortious interference cause of action, is not addressed anywhere in Appellants' Brief. Thus, it is waived.