**Tara A. SIMMONS, a minor, by her parent and natural guardian, Sharon L. GRENELL, and Sharon L. Grenell, in her own right**

v.

**PARKETTE NATIONAL GYMNASTIC TRAINING CENTER; Parkette National Gymnastic Team, Inc.; and Parkette National Gymnastic Center, Inc.**

Civ. A. No. 87–0645.

United States District Court,
E.D. Pennsylvania.

July 9, 1987.

Feinberg & Silva, Philadelphia, Pa., for plaintiff.

Harvey, Pennington, Herting & Renneisen, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

The plaintiffs instituted this action claiming that the minor plaintiff, Tara A. Simmons, suffered personal injuries as a result of the negligent acts and/or omissions of one or more of the defendants' employees. The minor plaintiff's mother asserts causes of action against the defendants in her own right and on behalf of her minor daughter as the child's parent and natural guardian.

The defendants assert as an affirmative defense a "release" alleged to have been executed by the plaintiffs on February 12, 1984. (Defendant's Answer, Doc. # 4, Sixth Affirmative Defense). The defendants seek judgment against the plaintiffs on the basis of the pleadings pursuant to Fed.R.Civ.P. 12(c) on the ground that the release absolves them from all liability for the damages allegedly suffered by the plaintiffs. We believe, however, that the defendants' motion is more appropriately characterized as one for summary judgment pursuant to Fed.R.Civ.P. 56, and we have, therefore, considered it as such. Thus, we may grant the motion only if there are no genuine issues of material fact and the defendants are entitled to judgment as a matter of law. *See, e.g., General Sound Telephone Co., Inc. v. AT & T Communications, Inc.*, 654 F.Supp. 1562 (E.D.Pa.1987), for a discussion of the requirements for the entry of summary judgment.

The "release" asserted by the defendants provides as follows:

> In consideration of my participation in Parkettes, I, intending to be legally bound, do hereby, for myself, my heirs, executors, and administrators, waive and release any and all right and claims for damages which I may hereafter accrue to me against the United States Gymnastic Federation, the Parkette National Gymnastic Team, their officers, representatives, successors, and/or assigns for any and all damages which may be sustained and suffered by me in connection with my association with the above gymnastic program, or which may arise out of my traveling to or participating in and returning from any activity associated with the program.

| Gymnast's Signature | /s/ Tara Simmons |
|---|---|
| Signature of Parent or Guardian | |
| | (Father) |
| | /s/ Sharon Grenell |
| | (Mother) |

(Defendants' Motion for Judgment on the Pleading, Doc. # 5, Ex. "A").

As can be seen, the release is prospective in nature, *i.e.*, it purports to exculpate the defendants from future liability, as opposed to a release compromising and settling an already existing claim for damages. *See, e.g., Gimpel v. Host Enterprises, Inc.*, 640 F.Supp. 872 (E.D.Pa.1986) (exculpatory clause contained in preprinted rental agreement effectively released bicycle lessor from any liability arising from rental and use of bicycle leased to plaintiff). Looking to the law of Pennsylvania to determine the validity of such exculpatory agreements, it is clear that,

> Generally speaking, an exculpatory (agreement) is valid if: (a) 'it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or State ...' (Citation omitted); (b) 'the contract is between persons relating entirely to their own private affairs' (Citation omitted); (c) 'each party is a free bargaining agent' and the (agreement) is not in effect 'a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter having no alternative other than to reject the transaction entirely'. (Citation omitted).

Assuming, *arguendo*, that the instant exculpatory (agreement) satisfies all three conditions and is valid, our case law requires that, even if valid, an exculpatory (agreement) must meet certain standards [to be enforceable] ...

Such standards are: (1) contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law; (Citations omitted); (2) such contracts 'must spell out the intentions of the parties with the greatest of particularity'; (Citation omitted) and show the intent to release from liability 'beyond doubt by express stipulation' and '[n]o inference

from words of general import can establish it' (Citation omitted); (3) such contracts must be construed with every intendment against the party who seeks the immunity from liability (Citation omitted); (4) the burden to establish immunity from liability is upon the party who asserts such immunity (Citation omitted).

*Gimpel v. Host Enterprises, Inc.*, 640 F.Supp. at 974, *quoting, Employers Liability Assurance Corp., Ltd. v. Greenville Business Men's Association*, 423 Pa. 288, 291–293, 224 A.2d 620 (1966).

It is axiomatic under Pennsylvania law that,

A valid release is an absolute bar to recovery for everything included in the release, and it can only be set aside *as any contract* ... in the presence of clear, precise and indubitable evidence of fraud, accidental means or *incompetence of the party who is alleged to have signed it*.

*Dorenzo v. General Motors Corporation*, 334 F.Supp. 1155, 1156 (E.D.Pa.1971), *quoting, Mannke v. Benjamin Moore & Co.*, 375 F.2d 281, 285 (3d Cir.1967) (Emphasis added); *see also, Reed v. Smithkline Beckman Corp.*, 569 F.Supp. 672 (E.D.Pa.1983).

A. The Adult Plaintiff.

■ As to the minor plaintiff's mother's claim, *i.e.*, Count II of the complaint, we conclude that her cause of action is indeed barred by the exculpatory agreement she signed. She does not argue and has presented no evidence that the release was the product of fraud, duress, incompetence or other factor which would invalidate it. Further, the fact that her minor daughter has purported to disaffirm the release, (Plaintiff's Reply to Defendants' Motion for Judgment on the Pleading, Doc. # 7, Ex. "A"), has no effect on her own, personal claim for damages. As stated by the court in *Apicella v. Valley Forge Military Academy*, 630 F.Supp. 20 (E.D.Pa.1985),

Under Pennsylvania law personal injury to a minor gives rise to two separate and distinct causes of action, one the parents' claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for the losses after minority.

*Id.* at 23, *quoting, Olivieri v. Adams*, 280 F.Supp. 428 (E.D.Pa.1968). For these reasons, we must grant the defendant's motion as to Sharon L. Grenell's personal claim for damages.

B. The Minor Plaintiff.

■ The effect of the exculpatory agreement upon the minor plaintiff's claim for damages, *i.e.*, Count I of the complaint, presents a somewhat more difficult question. It is hornbook contract law that a minor, with certain exceptions, is not competent to enter into a "valid" contract. *See, e.g.,* Restatement (Second) of Contracts § 12 (1981). Where a minor executes a contract, however, the agreement is not "void", but rather, "voidable". *See, e.g.,* Restatement (Second) of Contracts § 7 (1981). After reaching the age of majority, the minor may disaffirm the contract, thereby rendering it a nullity.[1] *See, e.g.,* Restatement (Second) of Contracts § 14 (1981). An exculpatory agreement such as that involved herein is simply a specific type of contract. Syllogistically, therefore, one would assume that the minor plaintiff may nullify the release by disaffirming it and, apparently in response to the defendants' motion, this is what she has purported to do. (See Plaintiffs' Reply to Defendants' Motion for Judgment on the Pleadings, Doc. # 7, Exhibit "A").

■ In *Apicella v. Valley Forge Military Academy, supra,* the Court was faced with an issue similar to that presented here. The parents of a minor, in order to induce the defendant military school to allow their son to enter the academy, exe-

---

**1.** In *Langdon v. Strawhecker*, 46 D. & C.2d 764 (Ct.Com.Pl. Mercer County, 1969), the court concluded that the minor plaintiff need not wait until attaining the age of majority to disaffirm a release executed on his behalf by his parents. We likewise conclude that the minor plaintiff in this case need not wait until she attains the age of majority to disaffirm the exculpatory agreement involved.

cuted an agreement releasing Valley Forge "from all claims and damages arising from or related to or in any way connected with their son Jerry's hemophilic condition". 630 F.Supp. at 22. As a defense to the plaintiffs' suit for personal injuries allegedly suffered by the minor plaintiff, the defendant asserted that the release executed by the minor's parents insulated the defendant from any liability. The court rejected the defendant's argument, and found that under Pennsylvania law, the parents did not "possess the authority to release the claims or potential claims of a minor child merely because of the parental relationship", *id.* at 24, but, rather, could only release the defendants from any potential claims that the parents might assert. We concur in Judge Shapiro's interpretation of Pennsylvania law. Thus, we find that the mother of the minor plaintiff, by executing the release involved, did not exculpate the defendants from the potential claims that eventually accrued to her daughter and which she now seeks to assert before this Court. *See also, Schmucker v. Naugle,* 426 Pa. 203, 231 A.2d 121 (1967).

■ The action *sub judice* is further complicated by the fact that, unlike *Apicella v. Valley Forge Military Academy, supra,* the minor plaintiff in this case herself executed the purported release in addition to her mother. Our research has failed to disclose a single instance in which a Pennsylvania court, a district court applying Pennsylvania law or the Third Circuit Court of Appeals has addressed the precise question whether a minor may disavow a prospective, exculpatory contract which he or she has signed. Similar cases have only dealt with the question of whether a minor may disaffirm a release which she has signed compromising and settling a claim that has already accrued to the minor.

In *Frank v. Volkswagen, A.G. of West Germany,* 522 F.2d 321 (3d Cir.1975), the Third Circuit Court of Appeals stated that while Pennsylvania generally recognizes the historical common law rule that minors may disaffirm their contracts, the State's courts have created an exception to this rule in the case of releases executed by minors. As stated by the Third Circuit,

the (Pennsylvania) cases involving releases have all placed considerable emphasis on the question of whether the minor had personally received part of the consideration paid therefor or had participated in its benefits, *Schmucker v. Naugle,* 426 Pa. 203, 231 A.2d 121 (1967); *Haines v. Fitzgerald,* 108 Pa.Super. 290, 165 A. 52 (1933); *Langdon v. Strawhecker,* 46 D. & C.2d 764 (1969), and on the basis of those cases, we believe that the Pennsylvania courts would not allow a minor to disavow a release where she had received the benefits therefrom.

*Id.* at 329.

In *Frank v. Volkswagen,* the minor plaintiff Muckin and her parents had both executed a "Parent-Guardian Release and Indemnity Agreement" in settlement of a claim against an individual, not a party to the action, named Miller. Muckin's parents also executed a general release signed only by them. Though Muckin and her parents had never actually instituted suit against Miller, they had, prior to executing the releases, petitioned for permission and received leave from the Court of Common Pleas of Bucks County to compromise and settle Muckin's claims against Miller. Volkswagen asserted the "Parent-Guardian Release and Indemnity Agreement" as a defense against Muckin's action against it.[2] The Third Circuit concluded that, since most of the "Miller" settlement fund had been utilized to pay Muckin's medical expenses and she had personally received the balance of the fund, Muckin had "partici-

---

**2.** The "Parent-Guardian Release and Indemnity Agreement" released, in addition to Miller and his insurer,

"all other persons, firms or corporations liable, or who might be claimed to be liable ... from any and all claims, demands, damages, actions, causes of action or suits of whatsoev-

er kind or nature, and particularly on account of bodily injuries sustained by Rosaria Ann Muckin, a minor twenty years of age, ... in consequence of an accident on or about the 5th day of August, 1948 ...".

522 F.2d at 328.

pated" in the "benefits" of the settlement and, thus, could not disaffirm the release she had signed.[3]

As noted earlier, this case does not involve a release executed pursuant to a compromise and settlement of an already existing claim, but rather, a release which purportedly prospectively exculpated the defendant from liability for the claim the minor plaintiff asserts here. The question, therefore, is whether the Pennsylvania courts would apply the same rationale that they apply in situations involving a release executed by a minor as a compromise and settlement of an already existing claim to this situation here involved.[4]

Here, it can be argued that the "benefit" received by the minor plaintiff in consideration for her execution of the release was the defendants' allowing her to participate in their organization. We do not believe, however, that this was the type of "benefit" the Pennsylvania courts or the Third Circuit had in mind in the cases cited. The common law rule that minors, with certain exceptions, may disaffirm their contracts has as its basis the public policy concern that minors should not be bound by mistakes resulting from their immaturity or the overbearance of unscrupulous adults. As stated by the Pennsylvania Supreme Court some years ago.

All lawyers know that the protection of infants is one of the chief concerns of the law. The rule is that no one may deal with a minor, except for necessaries. Lord Coke said that an infant may bind himself for his meat, drink, apparel, necessary physic and other such necessaries, and likewise for his good teaching or instruction, whereby he may profit himself afterward: 27 Am.Jur. 759. This, generally speaking, has been accepted as the true doctrine. An infant is not competent to contract. This positive inhibition is the way of the law to protect infants against their own lack of discretion and against the snares of designing persons.

*O'Leary Estate*, 352 Pa. 254, 42 A.2d 624 (1945). The Pennsylvania courts have created an exception to this rule based on another concern, involving public policy, specifically, the judicious and effective settlement of tort claims. As pointed out by the district court in *Frank v. Volkeswagen*, 382 F.Supp. 1394 (E.D.Pa.1974), Pennsylvania has adopted special rules of procedure to accommodate between the competing interests of protecting minors and the effective settlement of the claims they assert. If a minor were not bound by a court-approved settlement, there would never, in fact, be any settlements.

In the case before us, however, there was no court involvement in the transaction which occurred between the minor plaintiff and the defendants. Thus, she received none of the protections provided by the aforementioned special rules of procedure which apply to the settlement of minors' claims. Further, the public policy concern of the effective settlement of litigation is not involved here because of the very nature of the exculpatory agreement which the minor plaintiff executed. For these reasons, we do not believe that the Pennsylvania courts would bind the minor plaintiff to the agreement which she signed. Thus, we will deny the defendants' summary judgment motion as to those claims asserted by the minor plaintiff.

Finally, it is this Court's experience that agreements such as that involved herein have become commonplace in our society with regard to organizations such as little league, scouting, midget football and so on. Thus, we believe our decision represents an important one because of the impact it may

---

**3.** The Circuit Court also relied on the fact that Muckin had executed the release in conjunction with a court approved settlement. *See* Pa.R.Civ. P. 2039; *see also*, Restatement (Second) of Contracts § 14 comment b. ("..., certain contracts are held binding, ordinarily by statute, such as ... *contracts made with judicial approval*)". (Emphasis added).

**4.** Certain states have avoided this quagmire by statutorily providing that parental consent on behalf of a minor child in certain legal matters binds the child as though he or she were an adult. Section 12.04(7) of the Texas Family Code, for example, authorizes a parent to consent to matters of "substantial legal significance concerning the child"; *see also, Faloona v. Hustler Magazine, Inc.*, 607 F.Supp. 1341 (N.D.Tex. 1985), *affirmed*, 799 F.2d 1000 (5th Cir.1986).

have upon such organizations. We also believe that our decision as to the claim of the minor plaintiff involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from our order will materially advance the ultimate termination of this litigation. If our decision is affirmed by the Circuit Court, the action will merely be returned to this Court for trial. If the Circuit Court disagrees with our decision and concludes that the minor plaintiff is bound by the agreement, the action will be at its end. Thus, believing that the requirements of 28 U.S.C.A. § 1292(b) (West Supp.1987) have been satisfied, we will certify our order denying the defendants' summary judgment motion as to the minor plaintiff's claim for an immediate appeal. The defendants, if they so choose, may, therefore, avail themselves of the procedures provided for in § 1292(b).[5]

An appropriate order follows.

### ORDER

AND NOW, this 9th day of July, 1987, upon consideration of the defendants' motion for judgment on the pleadings, which we have construed as a motion for summary judgment, the plaintiffs' responses thereto, and the memoranda of law submitted by the parties in support of their respective positions, IT IS ORDERED that:

1. the defendants' motion for summary judgment as to Count II of the plaintiffs' complaint is GRANTED;

2. the defendants' motion for summary judgment as to Count I of the plaintiffs' complaint is DENIED; and

3. we certify for appeal pursuant to 28 U.S.C.A. § 1292(b) (West 1987) our decision denying the defendants' motion for summary judgment as to Count I of the plaintiffs' complaint.

---

**5.** We note that perhaps the most desirable procedure would be the ability to certify this issue for review to the Pennsylvania Supreme Court since it is Pennsylvania law which we must apply. Since the Commonwealth has not chosen, as some states have, to adopt such procedures, this avenue is foreclosed.