J-A26009-22
J-A26010-22

2023 PA SUPER 47

JENNIFER SANTIAGO AND SAMUEL : IN THE SUPERIOR COURT OF
SANTIAGO : PENNSYLVANIA
:
:
v. :
:
PHILLY TRAMPOLINE PARK, LLC I/P/A :
SKY ZONE, D/B/A SKY ZONE :
TRAMPOLINE PARK D/B/A SKY ZONE :
PHILADELPHIA, SKY ZONE :
PHILADELPHIA, INC., SKY ZONE :
TRAMPOLINE PARK A/K/A SKY ZONE :
PHILADELPHIA :
:
Appellants : No. 2615 EDA 2021

Appeal from the Order Entered August 23, 2021
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): February Term, 2021, No. 021

ALESSANDRA SHULTZ, : IN THE SUPERIOR COURT OF
INDIVIDUALLY AND AS P.N.G. FOR : PENNSYLVANIA
ROCCO SHULTZ, A MINOR :
:
:
v. :
:
:
SKY ZONE, LLC :
:
Appellant : No. 664 EDA 2022

Appeal from the Order Entered January 25, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 200701660

BEFORE: BOWES, J., KING, J., and PELLEGRINI, J.[*]

OPINION BY BOWES, J.: **FILED MARCH 21, 2023**

_____

[*] Retired Senior Judge assigned to the Superior Court.

In these separate appeals, we are tasked with deciding an issue of first impression in Pennsylvania: whether a parent's role as natural guardian entitles the parent to bind a minor child to an arbitration agreement and waive that child's right to seek redress for injuries in a court of law. Answering that question in the negative and concluding that the respective trial courts likewise properly resolved whether the parents' claims were subject to arbitration, we affirm both of the appealed-from orders that ruled upon motions to compel arbitration filed by Appellant, Sky Zone.[1]

## I.    **Facts and Procedural History**[2]

### A.    **The Shultz Plaintiffs**

In August 2018, Ryan Shultz took two minors, including his son Rocco, to Sky Zone, a Philadelphia trampoline park. In order for the children to use the facilities, Mr. Shultz was required to execute a six-page document entitled "Participant Agreement, Release and Assumption of Risk (The Agreement)." Petition to Compel Arbitration, 1/21/21, Exhibit B at 1. In addition to, among other things, recognizing a voluntary assumption of risk, allowing Sky Zone to

---

[1] In one case, the plaintiffs brought their claims against Philly Trampoline Park, LLC I/P/A Sky Zone, D/B/A Sky Zone Trampoline Park D/B/A Sky Zone Philadelphia, Sky Zone Philadelphia, Inc., and Sky Zone Trampoline Park A/K/A Sky Zone Philadelphia, while in the other, Sky Zone, LLC is the named defendant. For ease of discussion, we refer to the appellants in both cases, who are all represented by the same counsel, as "Sky Zone."

[2] We derive the underlying facts by accepting as true the allegations of the plaintiffs' complaints and from the record created for adjudication of the motions to compel arbitration.

use the children's' images on social media, agreeing to receive e-mail promotions, and broadly acknowledging "that if I or any of my children are injured in any way, this waiver prevents and prohibits any recovery of money from any Sky Zone related entity," *id*. at 6 (emphasis omitted), the Agreement contained the following arbitration provision:

**ARBITRATION OF DISPUTES; TIME LIMIT TO BRING CLAIM**

☑ I understand that by agreeing to arbitrate any dispute as set forth in this section, I am waiving my right, and the right(s) of the minor child(ren) above, to maintain a lawsuit against SZ and the other Releasees for any and all claims covered by this Agreement. By agreeing to arbitrate, I understand that I will **NOT** have the right to have my claim determined by a jury, and the minor child(ren) above will **NOT** have the right to have claim(s) determined by a jury. Reciprocally, SZ and the other Releasees waive their right to maintain a lawsuit against me and the minor child(ren) above for any and all claims covered by this Agreement, and they will not have the right to have their claim(s) determined by a jury. **ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO MY OR THE CHILD'S ACCESS TO AND/OR USE OF THE SKY ZONE PREMISES AND/OR ITS EQUIPMENT, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE BROUGHT WITHIN ONE YEAR OF ITS ACCRUAL (i.e., the date of the alleged injury) AND BE DETERMINED BY ARBITRATION IN THE COUNTY OF THE SKY ZONE FACILITY, PENNSYLVANIA, BEFORE ONE ARBITRATOR. THE ARBITRATION SHALL BE ADMINISTERED BY JAMS PURSUANT TO ITS RULE 16.1 EXPEDITED ARBITRATION RULES AND PROCEDURES. JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF APPROPRIATE JURISDICTION**. This Agreement shall be governed by, construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania, without regard to choice of law principles. Notwithstanding the provision with respect to

the applicable substantive law, any arbitration conducted pursuant to the terms of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C., Sec. 1-16). I understand and acknowledge that the JAMS Arbitration Rules to which I agree are available online for my review at jamsadr.com, and include JAMS Comprehensive Arbitration Rules & Procedures; Rule 16.1 Expedited Procedures; and, Policy On Consumer Minimum Standards Of Procedural Fairness.

*Id*. at 3-4 (emphases in original). Mr. Shultz identified Rocco as one of the minor participants in the Sky Zone activities, and electronically executed the Agreement below the following provision:

By signing below, I represent and warrant that I am the parent, legal guardian, or power-of-attorney of the above listed Child(ren) and have the authority to execute this Agreement on his/her or their behalf and to act on his/her or their behalf. I have read each paragraph in this document and I and they agree to be bound by the terms stated therein, including the release of liability contained therein. I further agree to indemnify and hold harmless the Releasees from any and all claims which are brought by or on behalf of this or these minor Child or Children, or any of them, which are in any way connected with, arise out of, or result from their use of the Sky Zone Facility. I am 18 years of age or older. I am entering this agreement on behalf of myself, my spouse or domestic partner, the Child, and our respective and/or collective issue, parents, siblings, heirs, assigns, personal representatives, estate(s), and anyone else who can claim by or through such person or persons (collectively, the "Releasing Parties").

*Id*. at 5-6. While utilizing the facilities, five-year-old Rocco was injured when an older, larger child jumped on the same trampoline as Rocco. ***See*** Complaint, 7/24/20, at ¶ 8.

On July 24, 2020, Alessandra Shultz, who is Rocco's mother, filed a complaint in her own right and on behalf of Rocco in the Court of Common Pleas of Philadelphia County, seeking personal injury damages related to

Rocco's injury and for Ms. Shultz to recover the costs of his medical treatment. Sky Zone filed a petition to compel arbitration and stay the litigation. Following discovery on the matters raised in Sky Zone's petition, the trial court denied it by order of January 25, 2022. The Honorable Stella M. Tsai ruled that Ms. Shultz was not bound by Mr. Shultz's execution of the agreement because he was not acting as her agent when he signed it, and that parents lack the authority to waive their children's rights to file a lawsuit for their injuries. *See* Order, 1/25/22, at 2, 5.

On February 24, 2022, Sky Zone filed a notice of appeal, and both Sky Zone and the trial court complied with Pa.R.A.P. 1925. Sky Zone states the following questions in the Shultz appeal:

1. Whether the trial court erred in finding that the arbitration provision set forth in the waiver signed by [Mr. Shultz] has no binding effect on the claims of [Ms. Shultz] who was his wife—and therefore, acting as her agent—at the time he signed the waiver.

2. Whether the trial court erred in finding that the claims made by [Rocco] are not subject to the arbitration provision set forth in the waiver signed by [Mr. Shultz], such that minor [Rocco] may now disavow this waiver and bring his claims —which fall squarely within the scope of the arbitration provision—before a court of law.

Sky Zone's brief (Shultz) at 12 (cleaned up).

**B. The Santiago Plaintiffs**

In February 2019, Jennifer Santiago took her two minor daughters to a different Sky Zone location. Prior to their admittance to the play area, Ms. Santiago executed the same six-page digital Agreement as did Mr. Shultz,

acknowledging that she was waiving her rights, as well as those of her spouse and children, to seek redress in a jury trial for any injuries sustained or to recover any damages for such an injury, and agreeing to arbitrate any disputes.

Isabella Santiago, then three years old, proceeded to play on a trampoline during designated "toddler time" in a "toddler zone." Complaint, 2/23/21, at ¶ 23. In the absence of any Sky Zone employee monitoring the area, an adult male elected to use the same trampoline as the child. *Id*. at ¶¶ 23-24. The man's jumping threw Isabella toward another trampoline, causing her to fracture her knee on the seam in between and to require immediate and future medical care. *Id*. at ¶¶ 23, 27, 29.

Ms. Santiago and her husband, Samuel Santiago, individually and on Isabella's behalf, filed a complaint in the Court of Common Pleas of Philadelphia County seeking to recover money damages related to Isabella's injury. Sky Zone moved to stay the court proceedings and to compel arbitration, contending that the Agreement was a valid arbitration agreement and that all three plaintiffs' claims were within its scope. The Santiagos responded, acknowledging that Ms. Santiago executed the Agreement, but denying its validity to compel arbitration of the claims of Mr. Santiago or Isabella. Specifically, they contended that Ms. Santiago's unilateral execution of the Agreement was ineffective to bind her spouse or her child.

The trial court ordered discovery limited to Sky Zone's petition, after which the parties filed supplemental briefs. On August 23, 2021, the Honorable Angelo J. Foglietta denied Sky Zone's petition. Sky Zone filed a motion for the trial court to amend its order to certify it as immediately appealable pursuant to 42 Pa.C.S. § 702(b) and to stay the action pending appeal. The trial court denied the motion to amend by order of October 12, 2021.

On November 4, 2021, Sky Zone filed in this Court a petition for permission to appeal, which we denied as moot because an order denying an application to compel arbitration is immediately appealable as of right pursuant to 42 Pa.C.S. § 7320(a)(1). Instead, we treated Sky Zone's petition as a notice of appeal in accordance with Pa.R.A.P. 1316(a) ("The appellate court shall treat a request for discretionary review of an order that is immediately appealable as a notice of appeal if a party has filed a timely petition for permission to appeal[.]"). Thereafter, both Sky Zone and the trial court complied with Pa.R.A.P. 1925.

Sky Zone presents this Court with the following questions in the Santiago appeal:

1. Whether the trial court erred in denying [Sky Zone's] motion to amend order and stay litigation, where amending and certifying the order denying [Sky Zone's] motion to compel arbitration and stay litigation for immediate appeal would materially advance the ultimate termination of this matter and involves a controlling question of law as to which there is substantial ground for difference of opinion?

> 2. Whether the trial court erred in denying [Sky Zone's] motion to compel arbitration and stay litigation thereby allowing Plaintiffs to continue to litigate their respective claims before the trial court, where the participant agreement, release and assumption signed by [Ms. Santiago] included a provision that clearly and unambiguously required that any and all disputes, claims, or controversies arising out of or relating to [Isabella's] use of [Sky Zone's] premises and equipment be submitted to and settled by binding arbitration?

Sky Zone's brief (Santiago) at 7-8 (re-ordered and cleaned up).

## II.    Applicable Legal Principles

We begin our examination of Sky Zone's issues with a review of the governing legal principles.  "An order denying a petition to compel arbitration is an interlocutory order appealable as of right."[3]  ***Fineman, Krekstein & Harris, P.C. v. Perr***, 278 A.3d 385, 389 (Pa.Super. 2022) (cleaned up).  "[W]e employ a two-part test to determine whether the trial court should have compelled arbitration.  First, we examine whether a valid agreement to arbitrate exists.  Second, we must determine whether the dispute is within the scope of the agreement."  ***Id***. (cleaned up).

Our standard of review "is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition."  ***Id***. (cleaned up).  However, "[w]hether a claim is within the scope of an arbitration provision is

---

[3]  This resolves Sky Zone's first question in the Santiago appeal:  because Sky Zone had a statutory right to immediately appeal from the order denying its petition to compel arbitration, there was no need for the trial court to certify it for immediate appeal pursuant to 42 Pa.C.S. § 702(b).

- 8 -

a matter of contract, and as with all questions of law, our review of the trial court's conclusion is plenary." **Id**. (cleaned up).

> When addressing the issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration. However, the mere existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration.

**Adams v. Mt. Lebanon Operations, LLC**, 276 A.3d 1203, 1206 (Pa.Super. 2022) (cleaned up).

As a general rule of contract law, only the parties to an arbitration agreement may be compelled to arbitrate. **See**, **e.g.**, **Humphrey v. GlaxoSmithKline PLC**, 263 A.3d 8, 14 (Pa.Super. 2021) ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (cleaned up)). "Nevertheless, a party can be compelled to arbitrate under an agreement, even if he or she did not sign that agreement, if common law principles of agency and contract support such an obligation on his or her part."[4] **Id**. at 15 (cleaned up).

---

[4] We observe that a third-party beneficiary to a contract may also be bound by an arbitration agreement contained therein. **See**, **e.g.**, **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651, 661 (Pa.Super. 2013) ("[A] nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent."). Sky Zone does not contend that the minors are bound as third-party beneficiaries to the Agreement. Accordingly, we do not consider third-party-beneficiary status as a basis for deciding whether the minors are bound by the arbitration provision of the Agreement.

The existence of an agency relationship is a factual question for which the party asserting an agency relationship has the burden of proof. *See*, *e.g.*, *McIlwain v. Saber Healthcare Grp., Inc., LLC*, 208 A.3d 478, 485 (Pa.Super. 2019). There are four ways to create an agency relationship: "(1) express authority, (2) implied authority, (3) apparent authority, and/or (4) authority by estoppel." *Id*. (cleaned up). As this Court has summarized:

> Express authority exists where **the principal** deliberately and specifically grants authority to the agent as to certain matters. Implied authority exists in situations where the agent's actions are proper, usual and necessary to carry out express agency. Apparent authority exists where **the principal**, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act. Authority by estoppel occurs when **the principal fails** to take reasonable steps to disavow the third party of their belief that the purported agent was authorized to act on behalf of the principal.

*Id*. (cleaned up, emphases added). Hence, in determining whether a person is the agent of another, the focus is on the conduct of the principal, not on that of the purported agent. *See*, *e.g.*, *id*. at 486 ("[A]n agent cannot simply, by her own words, invest herself with apparent authority.").

Critically, "[a]gency cannot be inferred from mere relationships or family ties, and we do not assume agency merely because one person acts on behalf of another." *Wisler v. Manor Care of Lancaster PA, LLC*, 124 A.3d 317, 323 (Pa.Super. 2015). *See also US Coal Corp. v. Dinning*, 222 A.3d 431, 441 (Pa.Super. 2019) ("The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts or conduct clearly implying an agency." (cleaned up)). Specifically, "[i]t is well settled

- 10 -

that neither a husband nor wife has the power to act as agent for the other merely due to the marriage relationship." **Washburn v. N. Health Facilities, Inc.**, 121 A.3d 1008, 1014 (Pa.Super. 2015). "Rather, we look to facts to determine whether **the principal** expressly or impliedly intended to create an agency relationship. To that end, family ties may be relevant when considered with other factors evincing agency." **Wisler**, **supra** at 323 (emphasis added).

### III. Analysis

With the above principles in mind, we turn to Sky Zone's appellate issues, beginning with its claims that the trial courts improperly ruled that the parent signing each Agreement was not the agent for his or her absent spouse for purposes of agreeing to arbitrate any claims arising from the children's use of the facilities.

#### A. Mr. Santiago

Sky Zone asserts that the evidence demonstrated that Ms. Santiago had apparent and implied authority to sign the Agreement as Mr. Santiago's agent. Sky Zone's brief (Santiago) at 24. Sky Zone observes that it is undisputed that the Santiagos were married at the time Ms. Santiago signed the Agreement purporting to bind herself and spouse. **Id**. at 22. Sky Zone argues that, "by nature of their marital relationship and her role as [Isabella's] mother, [Ms.] Santiago had apparent authority to bind [Mr.] Santiago to the terms of the Agreement," and "caused [Sky Zone] to believe that she had

authority to sign the Agreement on both her own and [Mr.] Santiago's behalf." *Id*. at 23.

Sky Zone further posits that it "cannot possibly be expected to ask each and every patron, in signing the agreement, if they have actual authority to sign on behalf of their spouse." *Id*. at 24. It maintains that, "[i]nstead, it was reasonable for [Sky Zone] to rely upon the representations of the signing spouse as to her authority to sign on behalf of her husband." *Id*.

We find Sky Zone's arguments wholly unavailing. Sky Zone improperly focuses on the actions of the purported agent, not that of the non-signing principal, in asserting implied and apparent authority in this case. As noted above, implied authority only pertains where the agent's actions are necessary to carry out express agency. *See McIlwain*, *supra* at 485. Here, the certified record contains no evidence that Mr. Santiago deliberately and specifically granted his wife authority to sign as his agent, defeating any claim of either express or implied agency.

Similarly, apparent authority is present "where **the principal**, by word or conduct, causes people with whom the alleged agent deals to believe that the principal has granted the agent authority to act." *Id*. (emphasis added). Sky Zone cites no evidence that Mr. Santiago had any interaction at all with Sky Zone, let alone that he caused it by his word or deed to believe that Ms. Santiago was his agent. Rather, it relies solely upon the familial relationship and the conduct of the purported agent to support its assertion of agency,

which is a meritless argument. *See*, *e.g.*, *US Coal Corp.*, *supra* at 441 ("The relationship of agency cannot be inferred from mere relationship or family ties unattended by conditions, acts or conduct clearly implying an agency." (cleaned up)). Absent verbal or nonverbal communication **from Mr. Santiago** that caused Sky Zone to believe that he authorized Ms. Santiago to agree on his behalf to arbitrate any claims, Sky Zone has failed to establish that Ms. Santiago had apparent authority to act as her husband's agent.

We further reject Sky Zone's lament that it "cannot possibly be expected" to make sure that a person executing its digital Agreement had the authority to agree on her own behalf as well as that of her "spouse or domestic partner, the Child, and our respective and/or collective issue, parents, siblings, heirs, assigns, personal representatives, estate(s), and anyone else who can claim by or through such person or persons." Petition to Compel Arbitration, 1/21/21, Exhibit B at 6. It is well-settled that a third party must exercise reasonable diligence to determine the authority of an apparent agent, and "can rely on the apparent authority of an agent when this is a reasonable interpretation of **the manifestations of the principal**." *Bolus v. United Penn Bank*, 525 A.2d 1215, 1222 (Pa.Super. 1987). Sky Zone has presented no evidence of any diligence in learning whether Mr. Santiago authorized his wife to bind him to arbitration and no indication that Mr. Santiago otherwise

manifested such an intent to Sky Zone prior to her execution of the Agreement.

It is axiomatic in the law of contracts that only parties to the agreement are bound thereby. **See**, **e.g.**, **Humphrey**, **supra** at 14 ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (cleaned up)). If Sky Zone wishes to create enforceable agreements to arbitrate from the laundry list of people it seeks to preclude from filing claims against it in a court of law, then obtaining the assent of each of those persons, directly or through the recognized principles of agency, is precisely what it must do.

### B. Ms. Shultz

Sky Zone's arguments as to Ms. Shultz are nearly identical to those it proffered as to Mr. Santiago. Sky Zone maintains that, given their marital relationship and his role as Rocco's father, and Mr. Shultz's representation that he had authority to sign for his spouse and anyone else associated with Rocco, Mr. Shultz had the apparent authority to bind Ms. Shultz to the arbitration agreement. **See** Sky Zone's brief (Shultz) at 29.

Sky Zone offers two additional facts in the Shultz case to support its agency contentions. First, it asserts that Ms. Shultz offered testimony indicating that her husband had authority to sign the Agreement on her behalf. **Id**. at 28. Specifically, Sky Zone represents that Ms. Shultz testified that Mr. Shultz "would have been the parent to sign any contracts for the both of

them on behalf of their children," and that, while she recalled no specific instances of that happening, "it would not have been surprising to her if he had done so." *Id*. at 28-29. Sky Zone suggests that this evinces that Mr. Shultz "had implied and apparent authority to sign the Agreement on [Ms.] Shultz's behalf and bind her to the terms of this Agreement." *Id*. at 29. Indeed, Sky Zone goes so far as to say that Ms. Shultz "affirmatively testified" that Mr. Shultz had her "approval to execute a contract on her behalf as it relates to their children" and that he "exercised this authority on a regular basis." *Id*. at 29-30.

These assertions are not supported by the certified record. The two pages of Ms. Shultz's deposition transcript upon which Sky Zone relies neither contains any such testimony nor supports the representations made by Sky Zone.[5] One begins mid-question with "to is, would it have surprised you if [Mr. Shultz] had signed that?" to which Ms. Shultz answered, "No. I guess not, no." and contains no other pertinent testimony. Supplemental Brief in Support of Response to Motion to Compel Arbitration, 6/29/21, at Exhibit B (Deposition of Ms. Shultz, 5/19/21, at 28). The other contains the following, abruptly-ending excerpt:

> Q    Do you know if [Mr.] Shultz has ever signed any contracts
> or agreements on behalf of you as a couple?

---

[5] Sky Zone did not include the entirety of the transcript of Ms. Shultz's deposition, but rather excerpts of a page here and a page there lacking context.

- 15 -

A      No, I don't believe so.

Q      Does Rocco go to school?

A      Yeah.

Q      Does Rocco play any sports?

A      No.

Q      I think you mentioned soccer at some point before this.

A      He has been unable to since this happened.

Q      But prior to this, he did play soccer?

A      Yeah.

Q      Did you ever have to sign anything in connection with that?

A      I'm sure Ryan did.  I don't think I did.

Q      So Ryan Shultz signed something, you think, on behalf of Rocco in order to allow him to play soccer?

[Counsel for Ms. Shultz]:      If you know.  I'm fine with [. . . .]

Supplemental Brief in Support of Motion to Compel Arbitration, 6/29/21, at

Exhibit 1 (Deposition of Ms. Shultz, 5/19/21, at 45).

This evidence suggests that Mr. Shultz might have signed some

undisclosed paperwork at some indefinite time for Rocco to play soccer.  It

comes woefully short of indicating that Ms. Shultz gave her husband blanket

authority to bind her to contracts and that he exercised that authority

frequently.  Moreover, nothing Ms. Shultz stated in her May 2021 deposition

suggests that she caused Sky Zone to believe that Mr. Shultz was authorized

to sign the Agreement on her behalf in August 2018.

The second fact cited by Sky Zone that distinguishes this case from the Santiago case is that Rocco had been to Sky Zone prior to the date he was injured there. *See* Sky Zone's brief (Shultz) at 20 (indicating that Rocco "had been to [Sky Zone's] trampoline park prior to the date of the alleged accident."); *id*. at 30 (stating that Rocco had been to Sky Zone "multiple times without any objection" from Ms. Shultz). It is unclear when these visits occurred or whether Ms. Shultz or someone else accompanied Rocco on the prior occasions, as Sky Zone does not cite where this fact is documented in the certified record. Presumably, if Ms. Shultz had herself signed an arbitration agreement on a prior visit, Sky Zone would assert that as a basis to compel her to arbitrate her claims. Likewise, if a witness had seen Ms. Shultz engage in conduct at a prior visit indicating that her husband was authorized to act as her agent in the future, we would expect Sky Zone to have produced testimony from that person. Instead, we have no information whether Ms. Shultz was even aware that Rocco had visited Sky Zone before, let alone that she caused Sky Zone to believe, prior to Mr. Shultz's execution of the Agreement on the day in question, that Mr. Shultz was her authorized agent for purposes of agreeing to arbitration.

Accordingly, Sky Zone's arguments in support of compelling Ms. Shultz to arbitrate her claims fail for the same reasons we discussed in connection with Mr. Santiago: without any conduct by Ms. Shultz that suggested to Sky Zone that she had authorized Mr. Shultz to agree on her behalf to arbitrate

any of her potential claims, Sky Zone failed to establish that Mr. Shultz had apparent authority to act as her agent.

### C.    Rocco and Isabella

Finally, we reach the novel question of Pennsylvania law common to both of these appeals:  whether a parent, in the role of natural guardian, as opposed to a court-appointed guardian, is the equivalent of being the child's agent for purposes of making a minor child a party to an arbitration agreement, thereby waiving the child's right to a jury trial.  In resolving this issue, we begin with a discussion of some principles pertinent to a child's legal status.

We observe at the outset that Rocco and Isabella could not have themselves agreed to arbitrate any potential claims against Sky Zone.  Minors lack the capacity to agree to an arbitration agreement or any other contract in their own right.  Rather, it has long been the law that minors lack capacity to contract.  **See**, **e.g.**, **In re O'Leary's Estate**, 42 A.2d 624, 625 (Pa. 1945) ("An infant is not competent to contract.").  A contract executed by a minor is not void *ab initio*, but is voidable such that the minor may, upon reaching majority, avoid any contract other than for necessaries.  **See**, **e.g.**, **Wharen v. Funk**, 31 A.2d 450, 452 (Pa.Super. 1943) ("[I]nfants may avoid their contracts on reaching majority.").

As such, minors lack the capacity to grant express authority to an agent to contract on their behalves, rendering any such resulting contracts voidable.

*See* Rest. (2d) Agency § 20 cmt. c (1958) ("The contract of an infant to employ an agent is voidable by him, as is any contract made for him by such agent, except a contract for necessaries."). Rather, minors act through their guardians.

We have explained that "Pennsylvania law defines a guardian as a person lawfully invested with the power, and charged with the duty, of taking care of the person and/or managing the property and rights of another person, who, for defect of age, understanding or self-control is considered incapable of administering his own affairs." *Rock v. Pyle*, 720 A.2d 137, 141 (Pa. Super. 1998). "Two classes of guardians have long been recognized at law: (1) guardian of the person being invested with the care of the person of the minor, and (2) guardian of the estate being entrusted with the control of the property of the minor." *Id*. "The spheres of authority of a guardian of the person and of a guardian of the estate are distinct and mutually exclusive." *Id*.

Statutory mechanisms exist for the court appointment and supervision of guardians for minors. *See* 20 Pa.C.S. §§ 5101-5167. However, "parents have intrinsic rights and responsibilities as the natural guardians of their minor children." *Rehrer v. Youst*, 91 A.3d 183, 192 (Pa.Super. 2014). Natural guardianship grants a parent "primary physical responsibility for the care and custody of the minor child." *Rock*, *supra* at 141. Yet "natural guardianship confers no inherent right to intermeddle with the property of the minor child,

and the natural guardian has no inherent authority to demand or power to receive, hold or manage the minor's property unless the natural guardian has also been appointed as guardian of the minor's estate." *Id*. *See also Rehrer*, *supra* at 192 ("[N]atural guardianship confers no right to intermeddle with the property of the infant . . .; a natural guardian has no authority whatever to exercise any control over the estate of the minor." (cleaned up)).  Rather, by statute, "[l]egal title to all real and personal property of a minor shall remain in him, subject, however, to all the powers granted to his guardian by this title and lawfully by a governing instrument and to all orders of the court." 20 Pa.C.S. § 303.

Pennsylvania courts have observed that "[a] cause of action is property[.]" *Tri-State Asphalt Corp. v. Dep't of Transp.*, 875 A.2d 1199, 1202 (Pa.Cmwlth. 2005) (citing *Fejerdy v. Fejerdy*, 437 A.2d 1244 (Pa.Super. 1981)).  In situations when a minor is injured, two distinct causes of action arise, "one the parents' claim for medical expenses and loss of the minor's services during minority, the other the minor's claim for pain and suffering and for losses after minority." *Hathi v. Krewstown Park Apartments*, 561 A.2d 1261, 1262 (Pa.Super. 1989) (cleaned up).

A parent obviously may pursue his or her own cause of action in tort in connection with the child's injury, subject to a two-year statute of limitations. *See* 42 Pa.C.S. § 5524(2).  However, "children have a distinct legal disability, as they are prohibited from personally bringing a cause of action before

reaching the age of majority." ***Nicole B. v. Sch. Dist. of Philadelphia***, 237 A.3d 986, 993 (Pa. 2020). Accordingly, "to safeguard certain minors' rights during their period of legal disability," 42 Pa.C.S. § 5533 "exempt[s] children from the operation of statutes of limitations during their period of legal disability, and enabl[es] them to bring a civil action on their own behalf upon reaching the age of majority." ***Id***.

Alternatively, a parent "has the natural and primary right to bring an action, as guardian, on behalf of his or her child," ***Dengler by Dengler v. Crisman***, 516 A.2d 1231, 1234 (Pa.Super. 1986). Nonetheless, "[a] minor's representation is subject to the trial court's control and supervision, and it has the right in each case to determine whether the litigation is in the minor's best interests." ***Rehrer***, ***supra*** at 193. Furthermore, "[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa.R.C.P. 2039(a).

With these principles in mind, we turn to the rulings at issue in these cases. The Santiago trial court, citing the tolling of the statute of limitations for Isabella's personal injury claims, concluded that Ms. Santiago "could not legally sign away [Isabella's] future claim for any injuries sustained while in [Sky Zone]'s facility." Trial Court Opinion (Santiago), 7/1/22, at 4. The Shultz trial court likewise ruled that Mr. Shultz lacked the authority to bind Rocco to arbitration of his claim, but relied upon federal district court decisions

purporting to apply Pennsylvania law. Specifically, the Shultz trial court cited cases premised generally upon a child's right to avoid contracts entered during the child's minority, and, particular to arbitration agreements, discussed the ruling in **Troshak v. Terminix Intern. Co., L.P.**, CIV. A. 98–1727, 1998 WL 401693 (E.D. Pa. July 2, 1998) (unpublished decision).

In **Troshak**, the father signed a "Termite Service Plan" agreement in connection with Terminix's provision of termite control services at the Troshak home in Pennsylvania. Alleging that Terminix's service caused personal injury and property damage, the family brought a civil action that was removed to federal court. There, Terminix sought to enforce an arbitration agreement contained in the service plan contract. The trial court was thus tasked with determining which family members were bound by the contract entered into by the father. Regarding the personal injury claims of the minor child, Terminix argued that the father had waived the child's right to proceed in court. Noting the lack of Pennsylvania authority on the issue, the court examined two other district court decisions, which it summarized as follows:

> In **Apicella v. Valley Forge Military Academy and Junior College**, 630 F.Supp. 20, 23 (E.D.Pa.1985), the court ruled that "under Pennsylvania law, Parents do not possess the authority to release the claims or potential claims of a minor child merely because of the parental relationship." In **Apicella**, the parents of Jerry Apicella enrolled their minor son as a student at Valley Forge. At that time, Valerie and John Apicella informed school officials that Jerry Apicella suffered from hemophilia. To persuade the school to enroll their son, the Apicella[s] signed a document releasing Valley Forge "from all claims and damages arising from or related to or in any way connected with their son Jerry's hemophilic condition." School officials permitted Jerry to

attend the school. Subsequently, Valerie and John Apicella, as the parents of Jerry Apicella, and Jerry Apicella on his own behalf, brought suit against Valley Forge claiming that the school and its employees were negligent in their care of Jerry Apicella. Valley Forge asserted that Jerry was estopped from asserting his cause of action because his parents signed a document releasing it from claims and damages arising from Jerry's hemophilic condition. The court rejected that argument. Based on analogous Pennsylvania case law, the court held that "John and Valerie Apicella released the defendants from potential claims which they had the right to assert but did not release the defendants from claims or potential claims which Jerry Apicella might assert upon reaching the age of majority." This ruling was adopted in **Simmons by Grinnel v. Parkette Nat'l Gymnastic Training Ctr.**, 670 F.Supp. 140 (E.D.Pa.1987).

In **Simmons**, a minor and her parent sued a gymnastic organization for personal injuries suffered by the minor while the minor was participating as a gymnast at the defendant training center. The defendant training center asserted the signing of a release as an affirmative defense. The release was signed by the minor and by the minor's mother. The release was prospective in nature and was intended to release the defendant from future liability as opposed to an already existing claim for damages. The court found that the minor's parent was bound by the release. The defendant asserted, *inter alia*, that the minor's claim was barred because the parent signed the release for the minor. Relying on **Apicella**, the court found that the minor's parent could not release the defendant from the potential claims that eventually accrued to the minor.

*Id*. at *4–*5 (some citations omitted). The **Troshak** trial court acknowledged

that **Apicella** and **Simmons** were not precisely on point, but concluded that,

"under the reasoning and holdings interpreting Pennsylvania law contained in"

those cases, "a parent cannot bind a minor child to an arbitration provision

that requires the minor to waive his or her right to file potential claims for

personal injury in a court of law." **Id**. at *5. The court explained that, since

a parent could not prospectively release a minor's potential claims, it follows

- 23 -

that "a parent does not have authority to bind a minor child to an arbitration provision that requires the minor to waive their right to have potential claims for personal injury filed in a court of law." *Id*.

Adopting this reasoning, the Shultz trial court concluded that Mr. Shultz's execution of the Agreement was not effective in waiving Rocco's right to file the instant action in court. Trial Court Opinion (Shultz), at 5. The court further ruled that, to the extent that Rocco was required to disaffirm the voidable contract made on his behalf by Mr. Shultz, Rocco's action of bringing this suit constituted such disaffirmance. *Id*. (citing *Haines v. Fitzgerald*, 165 A. 52, 55 (Pa.Super. 1933) (holding that bringing suit three months after reaching majority constituted disaffirmance of contract made during plaintiff's minority). Accordingly, the Shultz court denied Sky Zone's petition as to Rocco's claims.

Sky Zone proffers the same basic argument for reversal in both of these cases. It argues that *Troshak*, which is not binding on this Court, improperly conflates the release of a minor's personal substantive claims with a mere "agreement to litigate a dispute in a specific forum." Sky Zone's brief (Shultz) at 34. Sky Zone asserts that the more persuasive non-binding authority is found in the decisions of our sister states that recognized that distinction: *Hojnowski v. Vans Skate Park*, 901 A.2d 381 (N.J. 2006), and *Cross v. Carnes*, 724 N.E.2d 828 (Ohio Ct. App. 1998).

- 24 -

In ***Hojnowski***, a twelve-year-old boy was injured at a skate park operated by defendant Vans. Before using the park, the boy's mother had executed a release and waiver that included an arbitration clause. When the boy sued through his parents as guardians *ad litem*, Vans moved to compel arbitration. The trial court granted Vans's motion, declining to rule on the validity of the release because it was an issue for the arbitrators to decide. The appellate court unanimously affirmed a parent's ability to "enter into an enforceable contract, binding on the parent's minor child, that waives the right to trial by jury of the minor's bodily injury claims and requires submission of 'any dispute' to arbitration." ***Hojnowski***, ***supra*** at 385 (cleaned up). The panel also fully agreed that the court should have considered whether the substantive waiver violated public policy, but divided on the answer to that question.

The New Jersey Supreme Court held that the exculpatory provision was invalid given "the protections that our State historically has afforded to a minor's claims and the need to discourage negligent activity on the part of commercial enterprises attracting children," noting that it was in that regard consistent "with the overwhelming majority of other jurisdictions." ***Id***. at 388-89 (citing, *inter alia*, ***Simmons*** and ***Apicella***).

However, the Court found no such public-policy reason to invalidate the waiver's arbitration clause. The Court explained: "As opposed to a pre-injury release of liability, a pre-injury agreement to arbitrate does not require a

minor to forego any substantive rights. Rather, such an agreement specifies only the forum in which those rights are vindicated." *Id*. at 392. Further, the Court held that a parent is "permitted to bind a minor child to arbitration," holding that, unless general contract defenses such as "fraud, duress, or unconscionability in the signing of the contract or that the agreement to arbitrate was not written in clear and unambiguous terms," then "a parent's agreement to arbitrate is valid and enforceable against any tort claims asserted on a minor's behalf." *Id*. at 393-94.

The *Hojnowski* Court cited as persuasive the decision of the Ohio Court of Appeals in *Cross*. In that case, the minor's mother executed, on her own behalf and on behalf of her daughter, a consent and release that permitted her daughter to appear on a television talk show. The document contained an agreement to arbitrate any disputes arising from the minor's appearance on the show. Displeased with her portrayal on the program, the minor, through her mother, sued the show for defamation. The show moved to enforce the arbitration agreement, and the trial court granted the motion, staying the court proceedings pending arbitration. The appellate court affirmed. It first noted that the Ohio Supreme Court had recently ruled that "public policy justifies giving parents authority to enter into . . . binding [pre-injury exculpatory] agreements on behalf of their minor children" that further the public policy of making non-profit recreational sporting activities affordable. *Zivich v. Mentor Soccer Club, Inc.*, 696 N.E.2d 201, 205 (Ohio

1998). The **Cross** Court indicated that the **Zivich** "holding leads us to believe that our conclusion, that a parent has the authority to bind his or her child to a resolution of the child's claims through arbitration, is correct under Ohio law." **Cross**, **supra** at 836. The Court continued:

> In so holding, we note that the parent's consent and release to arbitration only specifies the forum for resolution of the child's claim; it does not extinguish the claim. Logically, if a parent has the authority to bring and conduct a lawsuit on behalf of the child, he or she has the same authority to choose arbitration as the litigation forum.

**Id**.[6]

We are unpersuaded by Sky Zone's arguments in general and its reliance upon the **Hojnowski** and **Cross** decisions in particular. We reiterate that the issue before us is whether there exists in each case an agreement to arbitrate to which the minor child was a party or otherwise bound. **See Humphrey**, **supra** at 14 ("[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (cleaned up)). It is only if "common law principles of agency and contract" render the respective parents capable of contracting on behalf of their children that the children are bound to arbitrate in these cases. **Id**. at 15 (cleaned up).

---

[6] As the **Hojnowski** Court relied upon **Cross** in reaching its conclusion, the **Cross** Court in turn relied upon **Leong by Leong v. Kaiser Found. Hosps.**, 788 P.2d 164, 169 (Hawaii 1990), and **Doyle v. Giuliucci**, 401 P.2d 1, 3 (Cal. 1965). **See Cross v. Carnes**, 724 N.E.2d 828, 836 (Ohio Ct. App. 1998). We observe that both of those cases affirmed a parent's ability to bind a child to an arbitration provision in a contract of which the child is a **third-party beneficiary**. As noted above, Sky Zone has never posited that Rocco and Isabella were bound by the Agreement as third-party beneficiaries.

The foundation of the *Cross* ruling, which informed the *Hojnowski* decision, is that, because parents can choose to sue in court on behalf of their minor children, they are just as authorized to choose to arbitrate the claims instead. However, as discussed above, a parent's right to pursue litigation on behalf of a minor child "is subject to the trial court's control and supervision, and it has the right in each case to determine whether the litigation is in the minor's best interests." *Rehrer*, *supra* at 193. Concomitantly, a parent suing on a child's behalf as natural guardian nonetheless lacks authority to settle or discontinue without court approval. *See* Pa.R.C.P. 2039(a). Moreover, no Pennsylvania court has ruled that a parent has a right to enter a pre-injury release of a child's right to bring substantive claims as did the Ohio Supreme Court, and the above-referenced law protecting minors' substantive legal claims suggests to us that the federal district courts accurately predicted that Pennsylvania would reject that proposition as did the *Hojnowski* Court. *See Simmons*, *supra* and *Apicella, supra*.

In our view, the court involvement in a parent's litigation of a minor child's claims has the significant effect of transforming the parent's role from that of a natural guardian into, in essence, a court-approved guardian who has authority to make decisions about the minor's estate, not merely the

child's person.[7]  An agreement executed by natural guardian purportedly on the minor's behalf without any court involvement, however, has none of the legal safeguards attendant to the appointment of a guardian of the minor's estate.  Consequently, the parents in their pre-litigation state of natural guardianship lacked any authority to manage the estate of their minor children.  *See*, *e.g.*, *Rock*, *supra* at 141 ("[N]atural guardianship confers no inherent right to intermeddle with the property of the minor child, and the natural guardian has no inherent authority to demand or power to receive, hold or manage the minor's property **unless the natural guardian has also been appointed as guardian of the minor's estate**." (emphasis added)).

Therefore, we conclude that, in the absence of any suggestion that Rocco and Isabella were third-party beneficiaries of the Agreement, or that their respective parents were authorized to sign the agreements on their behalves, the statuses of Mr. Shultz and Ms. Santiago as natural guardians did not *ipso facto* grant them the authority to bind their minor children to an arbitration agreement.  Consequently, we hold that the trial courts properly denied Sky Zone's petitions to compel arbitration of the claims of Rocco and Isabella.

_____

[7]  *See* 20 Pa.C.S. §§ 5111-5116 (concerning appointment of guardians for minors).  *See also* 20 Pa.C.S. § 5101 (indicating certain circumstances when a guardian of minor with small estates is unnecessary); 20 Pa.C.S. § 5102 (providing that a court may authorize a parent as natural guardian to execute certain documents).

**IV.    Conclusion**

For the foregoing reasons, we conclude that the respective trial courts properly ruled that no agreements bound the children or non-signing spouses to resolve the alleged negligence claims in arbitration rather than in the courts.  Specifically, we agree with the trial courts that Sky Zone failed to meet its burden to show that the signatory spouses were the agents of the non-signing spouses.  Further, we hold that the parent-child relationship did not empower the signatory parents to waive their minor children's rights to have their claims resolved in a court of law.  Therefore, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>3/21/2023</u>