J-A10003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALEXIS STEFFE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TOLL PA, LP, TOLL GP | : | No. 2043 EDA 2024 |
| CORPORATION, TOLL BROS, INC., | : | |
| TOLL ARCHITECTURE, INC., TOLL | : | |
| ARCHITECTURE IPA, AND TOLL | : | |
| BROTHERS, INC. | : | |

Appeal from the Order Entered July 17, 2024
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 231001391

BEFORE:   PANELLA, P.J.E., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:            **FILED OCTOBER 9, 2025**

Alexis Steffe appeals from the order sustaining Toll PA, LP, Toll GP Corporation, Toll Bros, Inc., Toll Architecture, Inc., Toll Architecture IPA, and Toll Brothers Inc.'s ("Toll Brothers") preliminary objections and dismissing Steffe's complaint without prejudice, with leave to file her claims in arbitration. Steffe asserts she cannot be compelled to waive her right to a jury trial and submit to binding arbitration, as she never signed any contract with Toll Brothers. After careful review, we reverse the order and remand the matter for trial.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court set forth the relevant factual and procedural history:

> [Steffe's] parents purchased their house in September 2002 from [Toll Brothers]. [Steffe] was born on June 6, 2004. The Agreement of Sale for the house contained the following arbitration provision:
>
> > 11. ARBITRATION: Buyer, on behalf of Buyer and all permanent residents of the Premises, including minor children, hereby agree that any and all disputes with Seller, Seller's parent company o[r] their subsidiaries or affiliates arising out of the Premises, this Agreement, the Home Warranty, any other agreements, communications or dealings involving Buyer, or the construction or condition of the Premises including, but not limited to, disputes concerning breach of contract, express and implied warranties, personal injuries and/or illness, mold-related claims, representations and/or omissions by Seller, on-site and off-site conditions and all other torts and statutory causes of action ("Claims") shall be resolved by binding arbitration in accordance with the rules and procedures of Construction Arbitration Services, Inc. [("CAS")] or its successor or an equivalent organization selected by Seller. If CAS is unable to arbitrate a particular claim, then that claim shall be resolved by binding arbitration pursuant to the Construction Rules of Arbitration of the American Arbitration Association or its successor or an equivalent organization selected by Seller …
>
> [Steffe] claims that she suffers from multiple illnesses from being exposed to mold and other harmful conditions in the house sold to her parents by [Toll Brothers]. [Steffe] further claims that due to [Toll Brothers] breach, she and her parents had to expend a lot of money to cure their injuries. [Steffe's] parents[,] acting on their behalf and as parents and natural guardians of [Steffe] and her brother, filed claims with the American Arbitration Association (AAA) against [Toll Brothers] raising claims such as breach of express warranty, breach of contract, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law [("UTPCPL")], etc. The AAA claims were withdrawn with prejudice on January 26, 2021.

[Steffe] filed the instant matter on October 13, 2023, when she was nineteen (19) years old. In her amended complaint, [Steffe] claims that she had been exposed to toxic mold ever since she was a newborn due to critical construction defects by [Toll Brothers]. ...

Trial Court Opinion, 10/10/24, at 2-3 (pagination added for ease of reference; record citations omitted).

Steffe raised four claims in her complaint: (1) negligence, (2) breach of implied warranty of habitability, (3) fraudulent concealment, and (4) violation of the UTPCPL. Toll Brothers filed preliminary objections, specifically asserting the complaint must be dismissed as Steffe agreed to arbitrate the claims pursuant to the Agreement of Sale her parents signed before she was born. The trial court agreed, sustained the preliminary objections, and dismissed Steffe's complaint without prejudice for Steffe to file her claims in arbitration. Steffe appealed and complied with the trial court's order to file a Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b).

Steffe raising the following issue:

Did the trial court err by disregarding this Court's directives in **Chilutti** [**v. Uber Technologies, Inc.**, 300 A.3d 430 (Pa. Super. 2023) (*en banc*), app. granted, 325 A.3d 446 (Pa. Aug. 27, 2024)], **Santiago** [**v. Philly Trampoline Park, LLC**, 291 A.3d 1213 (Pa. Super. 2023), app. granted, 304 A.3d 330 (Pa. Sept. 13, 2023)], and **Humphrey** [**v. GlaxoSmithKline PLC**, 263 A.3d 8 (Pa. Super. 2021)] by dismissing this case without prejudice with leave to file her claims in arbitration where the evidence before the trial court demonstrated that no valid agreement to arbitrate existed between the parties because [Steffe] was not a party to a contract which was executed two years before her birth?

Appellant's Brief, at 10.

We begin with our standard of review: "Whether an agreement to arbitrate disputes exists is a question of law. When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law." **Chilutti**, 300 A.3d at 440 (internal quotation marks and citation omitted).[1]

The following standard applies:

This Commonwealth favors the settlement of disputes by arbitration as a matter of public policy, as it offers a means to a swift and easy disposition of claims. Despite this partiality, arbitration agreements are strictly construed and may not be extended by implication, either as to the persons subject thereto or the claims to be arbitrated. The parties' intent to arbitrate must be clear, for the terms of the agreement are not to be strained to discover it. They must be clear and unmistakable to oust the jurisdiction of the courts, for trial by jury cannot be taken away by implication, merely, in any case.

A party seeking to compel arbitration must satisfy a two-part test: first, the party must prove that a valid arbitration agreement exists, and second, that the dispute falls within the scope of the agreement. To determine whether a valid agreement to arbitrate exists, courts apply state law principles of contract law. Consistent with these principles, in most instances, only the parties to an

---

[1] We note that Toll Brothers filed an application to quash asserting this Court does not have jurisdiction to hear this appeal as it is interlocutory. **See** Application to Quash, 9/25/24, at 2-5. We denied the application without prejudice on December 18, 2024. **See** Order, 12/18/24 (single page). This order permitted Toll Brothers to "raise this issue, if properly preserved, in the appellate brief." **Id.** Toll Brothers has not raised this claim in their appellate brief. We therefore find it waived. Even if not waived, this claim would not merit relief, as this Court has held orders compelling parties to submit to binding arbitration are immediately appealable collateral orders under Rule 313. **See Chilutti**, 300 A.3d at 439; Pa.R.A.P. 313(b); **see also United Services Auto. Ass'n v. Shears**, 692 A.2d 161, 163 (Pa. Super. 1997) (*en banc*) (finding Rule 313 permits an interlocutory appeal on an order compelling arbitration).

arbitration agreement are bound to its terms. In some situations, however, courts will find that someone not a party to the agreement is nonetheless bound thereto; most commonly, these involve theories of third-party beneficiary, agency, or equitable estoppel.

***Santiago v. Philly Trampoline Park***, --- A.3d ---, 2025 WL 2724752, at *5 (Pa. filed Sept. 25, 2025) (citations, brackets, and quotation marks omitted).

Here, the parties dispute whether a valid agreement to arbitrate exists. Steffe never signed a contract with Toll Brothers and therefore asserts there is no valid agreement to arbitrate. **See** Appellant's Brief, at 19-20. Without any supporting argument, Toll Brothers submits Steffe is bound by the contract her parents signed, even though it was signed before she was born, because the contract included minors residing in the home. **See** Appellee's Brief, at 17. Further, Toll Brothers argue Steffe is bound by the contract as a third-party beneficiary. **See** Appellee's Brief, at 21-27. We address each argument in turn.

"[T]he elements of an enforceable contract are an offer, acceptance, consideration, or mutual meetings of the minds." ***Chilutti***, 300 A.3d at 443 (internal quotation marks and citation omitted).

> There must be a meeting of the minds; the very essence of an agreement is that the parties mutually assent to the same thing. Whether particular conduct expresses an offer and acceptance must be determined on the basis of what a reasonable person in the position of the parties would be led to understand by such conduct under all of the surrounding circumstances.

***Id.*** (brackets and citations omitted).

The contract signed by Steffe's parents was to purchase a house Toll Brothers was building. *See* Memorandum of Law in Support of Preliminary Objections, 11/13/23, at Exhibit B. Steffe's parents signed the contract on September 3, 2002. *See id.* The contract, an agreement of sale, includes terms such as the purchase price, deed and title to the property, mortgage application and approval, settlement costs, title insurance, construction of the house, home warranties, and the arbitration provision Toll Brothers now relies upon. *See id.*

Although the contract has nothing to do with children, including the possibility of future children, Toll Brothers asserts a reasonable person in the position of the parties would believe the arbitration agreement in the contract included Steffe. We find this argument incredulous. Steffe was not yet born; nor was her mother pregnant with her at the time she signed the contract. "[A] reasonable person in the position of the parties" at the time this contract was signed would not expect a future child to be bound by the provisions of this contract. *Chilutti*, 300 A.3d at 443 (citation omitted). We find there is no valid agreement to arbitrate between these parties and this claim does not support binding Steffe to her parents' agreement to arbitrate.

Next, Toll Brothers claims Steffe is bound by the arbitration agreement in the contract because she is a third-party beneficiary to the contract. *See* Appellee's Brief, at 21-27. Included within this argument, Toll Brothers asserts

Steffe is bound by the arbitration provision because she previously filed similar claims in the AAA. *See id.* at 22-23. This is factually incorrect.

We first address whether Steffe is bound by the arbitration provision because claims were filed with the AAA. Steffe's parents filed claims with the AAA, listing Steffe as a party. These arbitration claims were filed and withdrawn while Steffe was still a minor. *See* Affidavit of Jeffery R. Mullen, Esquire, at Exhibit C (a letter from the AAA confirming the withdrawal of Steffe's parents' arbitration claims dated January 26, 2021).

> Certain principles are relevant to our resolution of this issue. The first deal with the status of minors under the law. Minors are not "sui juris," a Latin phrase meaning "of one's own right" or "of full age and capacity." Simply by virtue of their age, minors are viewed as having a distinct legal disability. As we have explained, [i]n order that a minor, without experience and unaccustomed to business transactions, may not be deceived and imposed upon, the law has thrown around him a disability. Because they are not sui juris, minors are incompetent to contract, except for necessities such as food and clothing. Minors are also prohibited from bringing a cause of action in their own right before reaching the age of majority. The underlying rationale of this minority tolling is not to deprive minors of their rights, but to safeguard those rights during a period in which minors are viewed as being immature, inexperienced, and unable to independently protect themselves.
>
> In recognition of their legal disability, minors are protected through a series of rules of civil procedure that govern actions where a minor is a party. These rules establish a framework that ensures the litigation is serving the minor's interests. For instance, Rule 2027 mandates that when a party to an action, a minor shall be represented by a guardian who shall supervise and control the conduct of the action [on] behalf of the minor. This guardian derives no benefit from serving in that capacity but rather is simply one by whom a suit is brought or defended [on] behalf of another. While a minor may select a guardian, that selection is subject to the court's continuing authority to remove the guardian

if it determines that cause for removal exists. The court must approve any settlement, compromise or discontinuance of an action in which a minor is a party. Taken together, the rules assure that a minor's best interests are pursued and that the court has continuing supervision over the action. This promotes this Commonwealth's long-standing policy of protecting minors until they emerge from their legal disability.

Other relevant principles relate to the role of a minor's guardian. A guardian is invested with the power, and charged with the duty, of taking care of the person and/or managing the property right of another person. The law recognizes two categories of guardians: guardians of the person, who are invested with the care of the person of the minor, and guardians of the estate, who are entrusted with the control of the property of the minor. These are distinct and mutually exclusive spheres of authority. Accordingly, parents, who are recognized as natural guardians with rights to the care and custody of their minor children, have no authority whatever to exercise any control over the estate of the minor. Bluntly, natural guardianship confers no right to intermeddle with the property of the infant, but is a merely personal right to the custody of the minor. Guardians of the estate, in contrast, serve to affect a minor's estate and property in a manner that serves the best interests of the minor. Guardians ad litem are guardians of the estate appointed by a court to represent a minor in particular litigation. They are in a special sense representatives of the court whose function is to represent and protect a minor's interests. The powers and duties of a guardian ad litem are defined by statute, calibrated to ensure that the guardian identifies and pursues the minor's interests. A parent may be a guardian of their child's estate for purposes of litigation if a court appoints the parent to be the guardian ad litem.

Finally, we recognize that there is a vested property right in an accrued case of action. When a minor is injured, the parents and the minor have separate actionable claims; the parents have a claim for medical expenses and the loss of the minor's services, and the minor has claims for pain and suffering and for losses after minority.

*Santiago*, 2025 WL 2724752, at *10-11 (citations, brackets, ellipsis, some quotation marks, and footnote omitted).

As Steffe was a minor at the time the arbitration claims were filed and withdrawn, Steffe is not bound by the arbitration claims. Her right to bring a cause of action is a property right that her parents could not waive on her behalf without court approval or a court order appointing her parents as guardians of her estate. ***See id.*** at *11 ("As stated above, a parent has no inherent authority, by virtue of the status of natural guardian alone and without the sanction of some tribunal, to exercise power over a minor child's property, which includes a cause of action.") (citation and internal quotation marks omitted). There is no evidence in the record of a court order appointing her parents as guardians of her estate, approving her proceeding in arbitration, waiving her right to a jury trial, and approving the withdrawal of the lawsuit. As such, Steffe is not bound, as Toll Brothers allege, by the prior AAA proceeding.

Finally, we turn to Toll Brothers' claim that Steffe is proceeding as a third-party beneficiary to the contract. Steffe asserts she has not raised any claims as a third-party beneficiary. ***See*** Appellant's Brief, at 24-27. As Steffe asserts: "There is nothing in the contract which address[es], relates to, or covers any of [her] claims. [Her] claims emanate from a common law duty of care and breach of that duty." ***Id.*** at 24. Finally, Steffe points out this Court has held that "third[-]party beneficiary analysis is irrelevant where a non-signatory seeks to avoid arbitration. ***Humphrey***, 263 A.3d at 16. Such a

calculus only comes into play in matters where a non-signatory seeks to compel arbitration." *Id.* at 25.

We begin with the definition of a third-party beneficiary. We follow the Restatement (Second) of Contracts for the definition of a third-party beneficiary:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Restatement (Second) of Contracts, § 302(1); *Chen v. Chen*, 893 A.2d 87, 93-94 (Pa. 2006) (noting the Pennsylvania Supreme Court adopted section 302 for defining intended beneficiaries).

Toll Brothers does not argue Steffe falls under either category above. Toll Brothers merely concludes that Steffe is a third-party beneficiary because "[Steffe] previously asserted multiple third-party beneficiary claims in the AAA" and her current claims "rely upon third-party beneficiary status[.]" Appellee's Brief, at 23, 24. We find these allegations misleading.

First, we already addressed above that Steffe is not bound by her parents' AAA proceeding. Second, whether or not one is a third-party beneficiary depends on the intent of the signing parties. *See Humphrey*, 263 A.3d at 16 ("non-signatories to a contract, such as third-party beneficiaries,

- 10 -

may fall within the scope of an arbitration clause if that is the signing parties' intent.") (citation omitted). Just as Steffe's parents could not intend for their unborn future child to be bound by a contract they signed long before she was born, there are no circumstances that "indicate that the promisee [(Steffe's parents)] intend[ed] to give the beneficiary [(alleged to be Steffe)] the benefit of the promised performance." Restatement (Second) of Contracts, § 302(1)(a). Furthermore, as Steffe was not born at the time of the contract, it cannot be alleged that "the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary[.]" **Id.**

Therefore, we find no legal basis to compel Steffe to arbitrate her claims. Steffe was not born at the time her parents signed the contract that included an arbitration provision. It is unreasonable to find her parents intended her to be a third-party beneficiary and bound by the contract and arbitration provision when she was not yet born; nor was her mother even pregnant with her. Further, because Steffe did not file any claims with the AAA, she never acknowledged the arbitration provision in the contract. Steffe's parents are not the guardians of her estate, as we have no court order in our record providing as such. It follows that the AAA claims were made solely by Steffe's parents and not by Steffe, as without court approval no action to which a minor is a party shall be compromised, settled or discontinued, and the AAA claims were discontinued by Steffe's parents' voluntary withdrawal of the AAA claims. Consequently, the trial court erred in finding Steffe bound by the

arbitration agreement her parents signed. **_See Santiago_**, 2025 WL 2724752, at *13 ("[A] parent, as a natural guardian, has no authority to agree to a private adjudication of a minor child's legal interest."). We thus reverse the order sustaining Toll Brothers' preliminary objections and remand this matter for trial.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/9/2025